SCURA, WIGFIELD, HEYER & STEVENS, LLP
GUILLERMO J. GONZALEZ, ESQ (076102014)
1599 HAMBURG TURNPIKE
WAYNE, NJ 07470
(973) 696-8391
Attorneys for Defendants
Attorney for Plaintiff, Township of Roxbury

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>STRATEGIC ENVIRONMENTAL PARTNERS, LLC, RICHARD W. BERNARDI and MARILYN I. BERNARDI,<br><br>Debtors, | Case Nos.:  16-27757 (CMG) and<br>16-22153 (CMG)<br><br>Chapter 11<br><br>Judge:   Hon. Christine M. Gravelle |
| TOWNSHIP OF ROXBURY,<br><br>Plaintiff,<br><br>v.<br><br>STRATEGIC ENVIRONMENTAL PARTNERS, LLC, RICHARD W. BERNARDI and MARILYN I. BERNARDI,<br><br>Defendants, | Adv. Pro. No.<br><br>**ADVERSARY PROCEEDING COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)** |

Plaintiff, Township of Roxbury (the "Township"), by way of Adversary Proceeding Complaint to Determine Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a) against Debtor-Defendants, Strategic Environmental Partners, LLC ("SEP"), Richard W. Bernardi and Marilyn I Bernardi (the "Bernardis"), (all three debtor-defendants referred to hereafter collectively as the "Defendants"), states as follows:

1

## PARTIES

1. The Plaintiff, Township of Roxbury, at all times relevant herein, is a municipal corporation organized under the laws of the State of New Jersey with offices located at 1715 Route 46, Ledgewood, County of Morris, State of New Jersey.

2. The Debtor-Defendant, Strategic Environmental Partners, LLC, at all times relevant herein, is a limited liability company of the State of New Jersey with an address at 7 Michael Court, Millstone, County of Somerset, State of New Jersey.

3. The Debtor-Defendant, Richard W. Bernardi, at all times relevant herein, is an adult individual and the spouse of Marilyn I. Bernardi.

4. The Debtor-Defendant, Marilyn I. Bernardi, at all times relevant herein, is an adult individual, the spouse of Richard W. Bernardi, and the sole owner/member and President of SEP.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the parties in the subject matter of this proceeding pursuant to 28 U.S.C. § 157(c) and § 157(b)(2). This adversary proceeding arises under and relates to the Chapter 11 cases of SEP, Case No. 16-27757, and the Bernardis, Case No. 16-22153, now pending in the United States Bankruptcy Court for the District of New Jersey.

6. This matter is also a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7. Venue of this case is proper in the District Court of New Jersey pursuant to 28 U.S.C. § 1409(a).

8. The statutory basis for the dischargeability portion of the relief requested in this Complaint is 11 U.S.C. § 523(a)(6) and is brought under Rules 7001 and 7008 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

9. On February 10, 2011, SEP purchased a parcel of property located within the Township identified on the Township's Tax Map as Block 7404, Lot 1 (the "Property"), on which the Fenimore Landfill (the "Landfill") is located.

10. Richard Bernardi executed a $950,000.00 mortgage agreement for the Property as the "Managing Member" of SEP.

11. The Landfill operated as a solid waste landfill from the early 1950's until about 1977.

12. The Landfill ceased operation in or about 1977, but was never properly capped or closed.

13. SEP purchased the Property with the purported intention of capping and closing the Landfill and erecting a solar farm thereon.

14. On October 6, 2011, the Defendants and the NJDEP entered into an Administrative Consent Order (the "ACO"), which memorialized the terms of the Landfill closure and post-closure plan, including the construction of the proposed solar array.

15. The ACO was signed by Richard Bernardi individually and as the Director and Managing Member of SEP.

16. Marilyn Bernardi authorized Richard Bernardi to be the person in charge of the day-to-day operations of SEP's Landfill closure project between December 2011 and June 2013.

17. The ACO authorized the Defendants to accept approximately 1.2 million cubic yards of regulated fill material onto the Landfill pursuant to a Materials Acceptance Protocol in order to create the topography and stratigraphy suitable for installation of the proposed solar array.

18. The ACO and closure plan required the Defendants to install and implement numerous environmental controls as part of the Landfill closure, including but not limited to, placement of an

3

impermeable cap over the Landfill contents, proper soil and sediment erosion control measures, installation of a leachate collections system, installation of a methane-gas collection and venting system, installation of monitoring wells to detect potential future off-site migration of contaminants from the Landfill, and 30 years of post-closure monitoring.

19. On or about May 11, 2012, the NJDEP terminated the ACO and notified the Defendants that it intended to revoke the closure plan.

20. On or about May 18, 2012, the NJDEP ordered the Defendants to immediately cease acceptance of any fill material onto the Landfill.

21. Prior to May 2012, the Defendants accepted fill material onto the Landfill, specifically construction and demolition waste, including significant amounts of ground gypsum board, such as wallboard.

22. Contrary to the requirement in the ACO, the Defendants continuously failed to cover the fill material brought onto the Landfill with soil.

23. In or around November 2012, anaerobic decomposition of the ground gypsum board began generating large volumes of hydrogen sulfide gases, which emanated from the Landfill, thereby emitting a noxious rotten egg odor therefrom.

24. By mid-November 2012, the Township's Health Department began receiving complaints from its residents of odors in the Ledgewood section of the Township, where the Landfill is located.

25. The Township's investigation of the odor complaints ruled out a problem with the sanitary sewer system and almost immediately determined that the odors were originating from the Landfill.

26. Also in November 2012, the NJDEP began receiving complaints from individuals living near the Landfill about the rotten egg odor and symptoms of irritated nose, throat, eyes, and skin, nausea, asthmatic events, and headaches.

27. The NJDEP investigated the odors and determined that hydrogen sulfide gases emanating from the Landfill were the cause of the odor.

28. From mid-November 2012 to January 2013, the NJDEP received approximately 2,500 odor complaints about the Landfill.

29. Since November 2012, the Township has received hundreds of complaints from surrounding property owners of foul, rotten egg odors, thereby affecting the residents and the general public's health and the enjoyment of their property and public spaces.

30. Specifically, the complaints indicated adverse impacts on the enjoyment of property, health related issues such as nausea and respiratory maladies, as well as other issues that have serious impacts on the quality of life.

31. In light of the community health hazard and odor nuisance, the Township retained the services Emilcott Associates Inc. ("Emilcott"), a company comprised of environmental, health and safety experts, to conduct air monitoring tests for the hydrogen sulfide gases emanating from the Landfill.

32. Additionally, the Township retained Maser Consulting, P.A. ("Maser"), to provide engineering consulting services in connection with the health hazard and odor nuisance at the Landfill and the abatement of same.

33. As a result, the Township's residents were not only burdened by the noxious and potentially hazardous odors that emanated from the Landfill, but also by the hundreds of thousands of dollars in taxpayer expense used to retain the services of Emilcott and Maser, which was necessary given the ongoing health hazard and odor nuisance.

34. The Township Health Officer pursued the abatement of the odor nuisance at the Landfill through the issuance of notices of violation pursuant to N.J.S.A. 26:3-49, directing the Defendants to abate the odor nuisance and, when ignored, issuing summonses in the Roxbury Township Municipal Court.

35. As a result, between December 6, 2012 and March 14, 2013, the Roxbury Township Environmental Health Specialists, Abigail Montgomery and Matthew Zachok, issued 26 summonses against SEP and Richard Bernardi, for violations of Roxbury Township Ordinance § 22-2, adopted from the Public Health Nuisance Code of New Jersey, which prohibits "the escape into the open air of such quantities of smoke, fly ash, dust, fumes, vapors, mists or gases as to cause injury, detriment or annoyance to the inhabitants of this Municipality or endanger their comfort, repose, health or safety."

36. Despite the notices of violation issued against the Defendants by the Township Health Office and the Township's order for the Defendants to abate the odor nuisance, the Defendants continued to bring in fill material to the Landfill and failed to take any action in order to abate the nuisance.

37. On June 24, 2013, after hearings on the summonses in the Roxbury Township Municipal Court, the Honorable Ira A. Cohen, J.M.C. ("Judge Cohen") found SEP and Richard Bernardi guilty of all 26 charges of violating Roxbury Township Ordinance § 22-2. Judge Cohen held that SEP and Richard Bernardi created a nuisance by allowing a rotten egg smell to emanate into the air from the Landfill, thereby causing discomfort, detriment and annoyance to the citizens of the Township.

38. On June 26, 2013, the NJDEP issued an Emergency Order, ordering that: (1) the NJDEP shall immediately assume full control of the Landfill; (2) no further deliveries of any fill material be accepted by the Defendants without express permission from the NJDEP; and (3) the

NJDEP's personnel and contractors shall enter the Landfill and take immediate action to abate the hydrogen sulfide odor.

39. SEP and Richard Bernardi filed a municipal appeal of Judge Cohen's finding of guilt on the 26 municipal summonses in the Morris County Superior Court, Criminal Division.

40. On May 12, 2014, the Honorable Robert J. Gilson, J.S.C. ("Judge Gilson") upheld Judge Cohen's findings that SEP and Richard Bernardi violated Roxbury Township Ordinance § 22-2 on each of the 26 occasions in which the summonses were issued.

41. SEP and Richard Bernardi then filed an appeal of Judge Gilson's May 12, 2014 decision to the Superior Court of New Jersey, Appellate Division.

42. On November 19, 2015, the Appellate Division affirmed Judge Gilson's decision to uphold Judge Cohen's municipal court decision.

43. To date, the NJDEP remains in full control and possession of the Landfill.

44. The tremendous level of odor that emanated from the Landfill and the numerous complaints of physical symptoms from the residents living in proximity to the Landfill were never abated by the Defendants; rather the odor was only abated after the NJDEP took over control of the Landfill.

45. On June 23, 2016, the Bernardis filed a joint voluntary Chapter 11 petition for relief under the Bankruptcy Code in the Bankruptcy Court in the District of New Jersey.

46. On June 23, 2016, SEP filed a voluntary Chapter 11 petition for relief under the Bankruptcy Code in the Bankruptcy Court in the District of New Jersey.

47. On August 23, 2016, SEP's petition for relief was dismissed by the Bankruptcy Court.

48. On September 16, 2016, SEP re-filed its voluntary Chapter 11 petition for relief.

7

49. The Township is listed as an unsecured creditor on Schedule E/F of SEP's petition in the amount of $1,588,412.12. The Township is not listed as a creditor in the Bernardi's petition.

## COUNT ONE
### (Public Nuisance)

50. The Township repeats each and every allegation contained in Paragraphs 1 through 49 of the Complaint as though set forth at length herein.

51. The Defendants' operations at the Landfill, particularly the importation of recycled gypsum materials, which decayed, caused emissions of hydrogen sulfide gases.

52. The Defendants operated the Landfill in a manner that caused offensive odors.

53. The Defendants failed to abate the odor while they were in control of the Landfill.

54. The Defendants' failure to abate the odor caused an unreasonable interference with and a deprivation of the Township residents and the general public's use and enjoyment of their property and public spaces.

55. The Defendants were unable and/or unwilling to abate the nuisance they created notwithstanding repeated demands that they do so.

56. The Township, in order to address the public health nuisance created by the Defendants, retained the services of environmental experts, engineering experts, procured air testing, and facilitated a warning system in an attempt to protect the health, safety and welfare of its residents and the general public from the odor nuisance generated by the Defendants' operation of the Landfill.

57. The Township was required to assign employees to monitor the nuisance created by the Defendants at a considerable expense.

58. The Township is entitled to reimbursement for the considerable funds spent in its attempts to address the nuisance created by the Defendants.

8

**WHEREFORE,** the Township of Roxbury demands judgment against the Defendant for monetary damages in the amount expended by the Township of Roxbury in addressing the nuisance; and for counsel fees, cost of suit and such other and further relief as the Court deems just and equitable.

## COUNT TWO
### (Non-Dischargeability of Debt Pursuant to 11 U.S.C. 523(a)(6))

59. The Township repeats each and every allegation contained in Paragraphs 1 through 58 of the Complaint as though set forth at length herein.

60. Section 523(a)(6) provides that a "discharge under section…does not discharge an individual debtor from any debt… for willful and malicious injury by the debtor to another entity or to the property of another entity."

61. The Defendants have caused willful and malicious injury to the Township and to the Township's property. The Defendants willfully and maliciously failed to abate the odor nuisance emanating from the Landfill, despite repeated demands that they do so.

62. The Defendants knew of their wrongful conduct, yet continued to bring fill material onto the Landfill after having created an odor nuisance, and failed to abate the nuisance after repeated demands to do so.

63. The Defendants knew that as a result of bringing in additional fill to the Landfill and allowing the odor nuisance to persist, the Township, its residents, and its property would be injured and incur damages.

64. The Township, its residents, and its property have incurred damages as a result of the Defendants aforementioned conduct.

**WHEREFORE,** the Township seeks a declaration that the Township's public nuisance claim for monetary damages in the amount expended by the Township in addressing the nuisance,

9

and which is owed to them by the Defendants, is a non-dischargeable debt which is the responsibility of the Defendants pursuant to 11 U.S.C. §523(a)(6); and compensatory damages, counsel fees, cost of suit and such other and further relief as the Court deems just and equitable.

                                  Attorneys for Plaintiff,
                                  Township of Roxbury

                                  By: /s/ Guillermo Gonzalez
                                      Guillermo J. Gonzalez, Esq.

Dated: October 3, 106